Jil McCORKINDALE, Plaintiff,

v.

AMERICAN HOME ASSURANCE
COMPANY/A.I.C.,
Defendants.

No. C 95–4108.

United States District Court,
N.D. Iowa,
Western Division.

Nov. 30, 1995.

Al Sturgeon, Sioux City, Iowa, for Plaintiff Jil McCorkindale.

John Werner of Grefe & Sidney, P.L.C., Des Moines, Iowa, for Defendants American Home Assurance Company and A.I.C. Claims Services, Inc.

## MEMORANDUM OPINION AND ORDER REGARDING DEFENDANTS' MOTION TO HOLD ACTION IN ABEYANCE AND PLAINTIFF'S MOTION TO REMAND TO STATE COURT

### TABLE OF CONTENTS

I. INTRODUCTION AND BACKGROUND ................................... 647

II. LEGAL ANALYSIS ............................................ 649
   A. Removal Jurisdiction ................................................. 649
     1. Principles of removal jurisdiction ...................................... 650
     2. Standards and procedures for determining removal jurisdiction ........... 650
       a. Effect of the proffered amendment ................................. 650
       b. The proper test in the circumstances presented ..................... 652
       c. Process for determining amount in controversy on removal ........... 653
     3. Application of standards and procedures ................................ 655
       a. Amount in controversy on the face of the complaint ................. 655
       b. Looking beyond the complaint ..................................... 656
   B. Motion To Hold In Abeyance ......................................... 657

III. CONCLUSION ............................................... 657

BENNETT, District Judge.

Defendants in this lawsuit, which was originally filed in state court, removed the action to federal court on the ground of diversity jurisdiction and promptly moved to hold the action in abeyance pending completion of proceedings before the Iowa Industrial Commissioner. The plaintiff, however, has moved to remand the action to state court, asserting that her complaint does not meet the jurisdictional minimum amount in controversy for federal diversity jurisdiction. She has also moved for leave to amend her complaint to assert, *inter alia*, that her damages are less than $50,000, but that motion for leave to amend is currently pending before one of the magistrate judges of this district. Therefore, this court must first determine whether plaintiff's assertion that her complaint does not meet the jurisdictional minimum amount in controversy for federal diversity jurisdiction to attach requires remand of this matter to state court. Only if remand is not appropriate will the court reach the defendants' motion to hold this action in abeyance.

### I. INTRODUCTION AND BACKGROUND

Plaintiff Jil McCorkindale filed her petition in this matter in the Iowa District Court for Woodbury County on September 26, 1995. The defendant was named as American Home Assurance Company/A.I.C. Defendants, in their Notice of Removal, filed October 18, 1995, state that American Home Assurance Company "is a corporation, autho-

rized to do business in the State of Iowa," [1] but that A.I.C. is a separate corporation that has "changed its name to A.I.G. Claim Services, Inc., and is a Delaware Corporation with its principal place of business in New York City." [2]

McCorkindale's petition alleges that the defendants were the carriers of workers compensation insurance for her employer, Heartland Hotel Partners II in Sioux City, Iowa, and that they acted in bad faith in denying payment of her claim for workers compensation benefits as the result of an injury suffered May 4, 1995. McCorkindale identifies her damages caused by defendants' conduct as including "exacerbation of physical injuries, pain and suffering, unnecessary and unreasonable delay in obtaining health care to alleviate pain and improve and diminish physical []impairment, actual economic loss, severe mental and emotional distress, and damage to [her] reputation in the community." However, the petition does not identify the nature or extent of McCorkindale's injuries. The petition does allege that acts and omissions of the defendants were "intentional, wanton and willful, and exhibiting a complete reckless disregard for [her] rights under the Workers' Compensation statutes," such that she is entitled to punitive damages. McCorkindale's prayer for relief is for damages "in an amount that will fairly and reasonably compensate her for her actual and general damages, and for punitive damages in an amount that will adequately punish Defendant and deter Defendant and others from any further conduct as described," and such other relief as the court deems appropriate. However, because Iowa law prohibits such pleadings,[3] the complaint makes no claim for damages in a specific amount, nor are there any allegations or itemizations of the amount of any specific or concrete items of damages, such as economic loss or medical expenses.

On October 18, 1995, defendants filed a Notice of Removal removing this action to this federal court. In that Notice of Removal, defendants assert that "[t]he amount in controversy in the above entitled action exclusive of interest and costs, exceeds $50,-000." Defendants further assert that "[t]his Court has original jurisdiction of the above-entitled action pursuant to 28 U.S.C. § 1332(a) and the action may, therefore, be removed to this court pursuant to 28 U.S.C. § 1441(a)." Defendants filed their answer to the complaint in federal court concurrently with their Notice of Removal. Also on October 18, 1995, defendants moved to hold this action in abeyance on the ground that in *Reedy v. White Consol. Indus., Inc.*, 503 N.W.2d 601, 602–03 (Iowa 1993), the Iowa Supreme Court concluded that courts considering claims of bad faith failure to pay workers compensation benefits not yet exhausted in proceedings in front of the Industrial Commissioner should use their discretionary abstention powers to delay further proceedings until after the Industrial Commissioner's proceedings have been completed.

On October 31, 1995, McCorkindale responded to these actions by the defendants. First, McCorkindale resisted the motion to hold in abeyance, apparently on the ground that it would further delay and deny her the rights and benefits to which she is entitled under the workers compensation laws of this state. McCorkindale also filed a motion for leave to amend her complaint to identify the defendants properly as two separate entities. Although leave for such an amendment was not specifically requested in her motion, the proffered amended complaint restates McCorkindale's prayer as a request for damages "totaling together less than $50,000.00, along with judgment interest as provided by law, and the costs of this action," as well as

---

1. The Notice of Removal does not identify the state of incorporation of American Home Assurance Company.

2. Plaintiff has moved for leave to amend her complaint to identify the defendants properly as separate entities.

3. Iowa Code § 619.18 provides as follows:

In an action for personal injury or wrongful death, the amount of money damages demanded shall not be stated in the petition, original notice, or any counterclaim or cross-petition. However, a party filing the petition, original notice, counterclaim, or cross-petition shall certify to the court that the action meets applicable jurisdictional requirements for amount in controversy.

such other relief as the court might deem appropriate. The court will take no position in this order on disposition of plaintiff's motion for leave to amend, as that matter is pending before a magistrate judge of this district and, in any event, is in no way dispositive of the remand and abeyance issues. Finally, also on October 18, 1995, McCorkindale moved to remand this matter to state court on the ground that plaintiff does not seek, and the complaint does not state, sufficient damages to meet the jurisdictional amount in controversy for this court's proper exercise of diversity or removal jurisdiction. McCorkindale therefore seeks remand of this action pursuant to 28 U.S.C. § 1447(a).

## II. LEGAL ANALYSIS

■ The court's analysis of the motions pending before it will begin with the motion to remand this action to state court. Only if this court can properly exercise diversity jurisdiction over this case, and hence removal jurisdiction, should it address any other matter.[4]

### A. Removal Jurisdiction

The grounds and procedures for removal of a state court proceeding to federal court and for remand to state court are stated in three statutes, 28 U.S.C. §§ 1441, 1446, and 1447. *See, e.g., Liberty Mutual Ins. Co. v. Ward Trucking Corp.,* 48 F.3d 742, 745 (3d Cir.1995) (Congress has enacted "a comprehensive statutory scheme for the removal of state court actions to federal court" and for remand of such actions back to state court).

The statute identifying removable actions, 28 U.S.C. § 1441, states in pertinent part:

(a) Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court *of which the district courts of the United States have original jurisdiction,* may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

28 U.S.C. § 1441(a) (emphasis added).

The procedure for removal is stated in 28 U.S.C. § 1446, which provides in pertinent part:

(b) The notice of removal of a civil action or proceeding *shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading* setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

28 U.S.C. § 1446(b). After filing, a matter that was not initially removable may become removable, and the statute provides for that eventuality as follows:

If the case stated in the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may

---

4. The federal district courts have always been courts of limited jurisdiction. *See U.S. CONST.,* Art. III, § 1. "Federal courts are not courts of general jurisdiction and have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." *Marine Equip. Management Co. v. United States,* 4 F.3d 643, 646 (8th Cir.1993) (citing *Bender v. Williamsport Area Sch. Dist.,* 475 U.S. 534, 541, 106 S.Ct. 1326, 1331, 89 L.Ed.2d 501 *reh'g denied,* 476 U.S. 1132, 106 S.Ct. 2003, 90 L.Ed.2d 682 (1986), citing in turn *Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 2 L.Ed. 60 (1803)). *See also Neighborhood Transp. Network, Inc. v. Pena,* 42 F.3d 1169 (8th Cir. 1994) (federal court jurisdiction limited by Article III of the Constitution). A federal court therefore has a duty to assure itself that the threshold requirement of subject matter jurisdiction has been met in every case. *Bradley v. Am. Postal Workers Union, AFL–CIO,* 962 F.2d 800, 802 n. 3 (8th Cir.1992) (citing *Sanders, infra*); *Thomas v. Basham,* 931 F.2d 521, 523 (8th Cir. 1991); *Jader v. Principal Mut. Life Ins. Co.,* 925 F.2d 1075, 1077 (8th Cir.1991); *Barclay Square Properties v. Midwest Fed. Sav. & Loan Ass'n,* 893 F.2d 968, 969 (8th Cir.1990); *Sanders v. Clemco Indus.,* 823 F.2d 214, 216 (8th Cir.1987). "Jurisdiction of the lower federal courts, both original and removal, is entirely a creature of statute." *Hurt v. Dow Chemical Co.,* 963 F.2d 1142, 1145 (8th Cir.1992); *Continental Cablevision v. United States Postal Serv.,* 945 F.2d 1434, 1435 (8th Cir.1991). If one of the statutory requirements is not met, the district court has no jurisdiction. *Hurt,* 963 F.2d at 1145.

first be ascertained that the case is one which is or has become removable, except that a case may not be removed on the basis of jurisdiction conferred by section 1332 [diversity] of this title more than 1 year after commencement of the action.

28 U.S.C. § 1446(b).

The procedure and grounds for a challenge to removal are stated in 28 U.S.C. § 1447:

(c) A motion to remand the case *on the basis of any defect in removal procedure* must be made within 30 days after the filing of the notice of removal under section 1446(a). *If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded....*

28 U.S.C. § 1447(c). McCorkindale's challenge to removal is based on lack of subject matter jurisdiction over the action at the time of removal on the basis of insufficient amount in controversy as required by 28 U.S.C. § 1332.

### 1. Principles of removal jurisdiction

This court has considered the key principles involved in a determination of whether removal jurisdiction is proper twice recently. *See Iowa Comprehensive Petroleum Underground Storage Tank Fund Bd. v. Amoco Oil Co.,* 883 F.Supp. 403, 407–08 (N.D.Iowa 1995); *Iowa Lamb Corp. v. Kalene Indus., Inc.,* 871 F.Supp. 1149, 1152–57 (N.D.Iowa 1994). Therefore, it is sufficient here to summarize those principles as follows: 1) the party seeking removal and opposing remand bears the burden of establishing federal subject matter jurisdiction; 2) a fundamental principle of removal jurisdiction is that whether subject matter jurisdiction exists is a question answered by looking to the complaint as it existed at the time the petition for removal was filed; 3) lack of subject matter jurisdiction requires remand to the state court under the terms of § 1447(c); 4) the court's removal jurisdiction must be strictly construed; therefore, 5) the district court is required to resolve all doubts about federal jurisdiction in favor of remand; and, finally, 6) in general, remand orders issued under 28 U.S.C. § 1447(c) are not reviewable by appeal or writ of mandamus. *Id.; Iowa Lamb Corp.,* 871 F.Supp. at 1154.

### 2. Standards and procedures for determining removal jurisdiction

The critical question in determining whether this court may properly exercise removal jurisdiction in this case pursuant to 28 U.S.C. § 1441(a) is whether this case involves a sufficient amount in controversy for the exercise of diversity jurisdiction pursuant to 28 U.S.C. § 1332. Although the burden is on them to prove the propriety of removal jurisdiction in the first place, defendants' primary argument against remand is that plaintiff's attempted amendment of the complaint to specify less than the jurisdictional amount cannot defeat removal. Quoting *Yates v. Process Sys., Inc.,* 766 F.Supp. 726 (S.D.Iowa 1991), defendants contend that "[i]t must appear to a legal certainty that the claim is really less than the jurisdictional amount to justify dismissal." *Yates,* 766 F.Supp. at 727 (in turn quoting *St. Paul Mercury Indemnity Co. v. Red Cab. Co.,* 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845 (1938)). In *Yates,* the district court held that "[a] plaintiff cannot by amendment divest the court of jurisdiction once it has attached" by amending the complaint to specify damages less than the jurisdictional amount. *Id.* Defendants cite in further support of this proposition *Core v. Southwestern Bell Telephone Co.,* 847 F.2d 497, 498 (8th Cir.1988) (per curiam); *Becker v. Crounse Corp.,* 822 F.Supp. 386 (W.D.Ky. 1993); and *De Aguilar v. Boeing Co.,* 790 F.Supp. 693, 694–95 (E.D.Tex.1992). Although defendants' general proposition may be true, it simply isn't dispositive of the present motion for remand.

#### a. Effect of the proffered amendment

The first flaw in defendants' assertion of this rule as dispositive in this case is found in the standard defendants themselves cite: "[a] plaintiff cannot by amendment divest the court of jurisdiction *once it has attached.*" *Yates,* 766 F.Supp. at 727 (emphasis added). Indeed, cases holding that a later amendment asserting less than the jurisdictional amount is ineffective to defeat removal jurisdiction have consistently been

ones in which *the petition at the time of the removal expressly stated a claim in excess of the jurisdictional amount.* The seminal case cited for the doctrine is an example. In *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845 (1938), the Supreme Court established the rule cited by defendants in a case in which the plaintiff had asserted in its original complaint damages in the sum of $4,000, which was in excess of the jurisdictional amount in controversy at the time of $3,000. *St. Paul Mercury Indemnity Co.*, 303 U.S. at 285, 58 S.Ct. at 588. The court concluded that events occurring subsequent to removal which reduce the amount recoverable, such as a latter amendment or proof only of lesser damages, "whether beyond the plaintiff's control or the result of his volition, do not oust the district court's jurisdiction *once it has attached.*" *Id.* at 293, 58 S.Ct. at 592 (emphasis added). Rather, the Court's test when an amount in excess of the jurisdictional amount was originally pleaded was that "if, from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed, or if, from the proofs, the court is satisfied to a like certainty that the plaintiff never was entitled to recover that amount, and that his claim was therefore colorable for the purpose of conferring jurisdiction, the suit will be dismissed." *Id.* at 289, 58 S.Ct. at 590. In the case before it, the Court ultimately concluded as follows:

> The present case well illustrates the propriety of the rule that subsequent reduction of the amount claimed cannot oust the district court's jurisdiction. Suit was instituted in the state court June 5, 1934. The lump sum claimed was largely in excess of $3,000, exclusive of interest and costs. The items which went to make up the respondent's demand for indemnity were numerous and each, in turn, was itself the total of several items of expenditure or liability. There is nothing to indicate that all of the sums for which reimbursement was claimed had actually been expended prior to the beginning of suit or that the sums thereafter to be expended had been ascertained. Not until the second amended complaint was filed in the United States court, in November 1934, did the respondent furnish a statement of the particulars of the claim. That statement is not inconsistent with the making of a claim in good faith for over $3,000 when the suit was instituted. Nor is there evidence that the petitioner when it removed the cause knew, or had reason to believe, that the respondent's claim, whether well or ill founded in law or fact, involved less than $3,000. On the face of the pleadings petitioner was entitled to invoke the jurisdiction of the federal court, and a reduction of the amount claimed, after removal, did not take away that privilege.

*Id.* at 295–96, 58 S.Ct. at 593–94. Thus, the circumstances in which the rule was invoked and applied are entirely distinguishable from the present case. Here, there is no claim on the face of the original complaint for an amount in excess of the jurisdictional amount which must therefore be overcome to a "legal certainty" in order to defeat removal. Thus, the "legal certainty" rule stated in *St. Paul Mercury Indemnity* and advocated by these defendants simply is inapplicable here.

Later cases are in accord with this court's reading of *St. Paul Mercury Indemnity* as applying the "legal certainty" rule only to cases in which the plaintiff originally claims damages in excess of the jurisdictional amount in controversy. *See, e.g., Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir.1995) ("legal certainty" rule of *St. Paul Mercury Indemnity* only applies "[w]here the plaintiff has alleged a sum certain that exceeds the requisite amount in controversy," but where a plaintiff pleads damages less than the jurisdictional amount, the plaintiff "generally can bar a defendant from removal."); *Gafford v. General Elec. Co.*, 997 F.2d 150, 160 (6th Cir.1993) ("The 'legal certainty' test in removal cases arose in a context where the plaintiff's prayer for damages in state court exceeded the federal amount-in-controversy requirement.... [T]he 'legal certainty' test should not be applied to situations ... where damages are unspecified."); *Shaw v. Dow Brands, Inc.*, 994 F.2d 364, 366 (7th Cir.1993) (applying *St. Paul Mercury* rule, because, although Illinois pleading rules forbade specifying the amount in controver-

sy, plaintiff's counsel initially did not contest defendant's assertion of sufficient amount in controversy, and in fact conceded as much in his brief, but later argued the jurisdictional amount could not be met); *In the Matter of Shell Oil Co.,* 970 F.2d 355, 356 (7th Cir.1992) (complaint alleging breach of contract to pay $70,000 a year on its face alleged amount in controversy in excess of jurisdictional amount, and subsequent amendment attempting to limit damages was ineffective under *St. Paul Mercury* rule); *Thompson v. Radosta,* 895 F.Supp. 113, 115 n. 4 (E.D.La. 1995) (plaintiff originally sought damages in excess of $50,000, but following removal, when amount in controversy was reduced, plaintiff was not entitled to remand).

Only cases from our own circuit muddy the waters, and only because the courts failed to state what, if any, amount of damages was originally pleaded before the plaintiff attempted to amend the complaint to state less than the jurisdictional amount. *See Core,* 847 F.2d at 498–99 (per curiam opinion in part affirming district court's denial of remand "after the amount of damages sought was amended to under the $10,000 jurisdictional amount," but not stating the amount of damages pleaded in the original complaint); *Yates,* 766 F.Supp. at 727 (an amended petition "filed in state court [six weeks after filing of the complaint]—after removal had been effected—restated plaintiff's prayer for relief to 'an amount less than $50,000,'" but court did not quote the amount in controversy in the original prayer for comparison). In both cases, however, it is apparent that removal jurisdiction had "attached" before the amendment intended to divest the court of

jurisdiction was made. *Core,* 847 F.2d at 498;[5] *Yates,* 766 F.Supp. at 727 (amendment was offered "after removal has been effected," and such amendment "cannot ... divest the court of jurisdiction once it has attached"). However, removal jurisdiction has not been shown to have attached in this case; indeed, whether or not removal jurisdiction has or can attach is the matter currently before the court. Absent any language expressly so stating, the court does not read these cases as broadening the *St. Paul Mercury* rule beyond the circumstances in which it was originally applied.

### b. The proper test in the circumstances presented

■ However, if "legally certainty" is not the standard against which this court is to measure damages claims and removal jurisdiction in this case, what is? In *Allen,* the Fifth Circuit Court of Appeals described the situation presented here as the "converse situation to *St. Paul Mercury*" and one that requires a test different from the "legal certainty" test. *Allen,* 63 F.3d at 1335.[6] The court had held that "'[w]hen the plaintiff's complaint does not allege a specific amount of damages, the removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds $50,-000.'" *Id.* (quoting *De Aguilar v. Boeing Co.,* 11 F.3d 55, 58 (5th Cir.1993), described both by the *Allen* court and this court hereafter as "*De Aguilar I*"). The court stated that

[w]e have never listed explicitly what types of proof are acceptable under this standard. Some caselaw, however, guides the

5. In *Core,* as authority for denial of the motion for remand on the basis of the amended complaint's amount in controversy, the Eighth Circuit Court of Appeals cited *Hensgens v. Deere & Co.,* 833 F.2d 1179, 1180 (5th Cir.1987). *Hensgens* points out that jurisdiction is determined at the time the suit is filed, and that subsequent events, such as failure to prove a federal question claim or the fall of the amount in controversy below the jurisdictional minimum, would not affect jurisdiction. *Hensgens,* 833 F.2d at 1180–81. The Fifth Circuit Court of Appeals reiterated that most "post-removal developments—amendment of pleadings to below jurisdictional amount or change in citizenship of a party—will not divest the court of jurisdiction but an addition of

a nondiverse defendant will do so." *Id.* at 1181. *Hensgens,* therefore, is no more than an application of the *St. Paul Mercury* rule, not an extension of it, and discusses only situations in which removal jurisdiction has attached before the amendment intended to oust jurisdiction is filed.

6. The Fifth Circuit Court of Appeals noted in *Allen* that the rules of civil procedure of the states of Texas and Louisiana, like the rules of civil procedure of Iowa, "disallow[] damage claims for specific amounts, *see* Tex.R.Civ.P. 47; La.Code Civ.Proc.Art. 893." *Allen,* 63 F.3d at 1335; *see also* Iowa Code § 619.18 (quoted *supra* in note 3).

district court's analysis. First, a court can determine that removal was proper if it is facially apparent that the claims are likely above $50,000. *See De Aguilar I,* 11 F.3d at 57; *cf. [Asociacion Nacional de Pescadores a Pequena Escala o Artesanales de Colombia (ANPAC) v. Dow Quimica de Colombia S.A.,]* 988 F.2d [559,] 566 [ (5th Cir.1993) ] (holding, in part, that remand was proper where the amount was not otherwise "facially apparent"). If not, a removing attorney may support federal jurisdiction by setting forth the *facts* in controversy—preferably in the removal petition, but sometimes by affidavit—that support a finding of the requisite amount. *See Garza v. Bettcher Indus. Inc.,* 752 F.Supp. 753, 763 (E.D.Mich.1990).

*Allen,* 63 F.3d at 1335. The court recognized that "[r]emoval, however, cannot be based simply upon conclusory allegations," and any jurisdictional facts asserted by the removing party must be judged "at the time of the removal." *Id.* Furthermore, the court clarified the standard as proof by the preponderance of the evidence, that is, proof that the jurisdictional amount was "more likely than not" met, rather than a "could well" or "possibility" standard. *Id.* at 1336.

7. With all due respect to the Fifth Circuit Court of Appeals, I have some doubts that such an extended procedure is proper. Such a procedure, affirmatively seeking evidence not available in the complaint, seems contrary to the rules that removability must be determined on the face of the complaint, *Humphrey v. Sequentia, Inc.,* 58 F.3d 1238, 1245 (8th Cir.1995) (whether federal question was presented, allowing removal, must be determined on the face of the complaint); *Reding v. FDIC,* 942 F.2d 1254, 1257 (8th Cir. 1991) (removability must be determined from the face of the complaint, not from plaintiff's anticipation of defenses or responsive pleadings), and that doubts about the validity of removal jurisdiction must be resolved in favor of remand of the action to state court. *In re Business Men's Assur. Co. of Am.,* 992 F.2d 181, 183 (8th Cir.1993) (citing *Steel Valley Auth. v. Union Switch & Signal Div.,* 809 F.2d 1006, 1010 (3d Cir.1987), *cert. denied,* 484 U.S. 1021, 108 S.Ct. 739, 98 L.Ed.2d 756 (1988)). The court sees no reason why a defendant should be given so many bites at the apple in order to meet its burden to prove that removal is proper when the plaintiff is generally the master of the complaint and may preclude removal jurisdiction by pleading less than the jurisdictional amount in controversy in the first

### c. *Process for determining amount in controversy on removal*

Having established the applicable standard in this case as whether the complaint "more likely than not" alleges a claim exceeding the requisite amount in controversy, the court turns next to the question question of what process it should use to see if the standard has been met. The decision of the Fifth Circuit Court of Appeals in *Allen* also provides an answer to this question. In *Allen,* the Fifth Circuit Court of Appeals likened the procedure applicable in circumstances similar to those presented here to that applicable to a motion to dismiss pursuant to *Fed.R.Civ.P.* 12(b)(6) or a motion for summary judgment:

In this case, where the district court is making the "facially apparent" determination, the proper procedure is to look only at the face of the complaint and ask whether the amount in controversy was likely to exceed $50,000. In situations where the facially apparent test is not met, the district court can then require parties to submit summary-judgment-type evidence, relevant to the amount in controversy at the time of removal.

*Id.;*[7] *and compare De Aguilar v. Boeing Co.,* 47 F.3d 1404, 1411–12 (5th Cir.1995) ("De

place. *St. Paul Mercury Indemnity Co.,* 303 U.S. at 294, 58 S.Ct. at 593; *Video Connection of Am. v. Priority Concepts, Inc.,* 625 F.Supp. 1549, 1551 (S.D.N.Y.1986); *Sponholz v. Stanislaus,* 410 F.Supp. 286, 288 (S.D.N.Y.1976). The Fifth Circuit Court of Appeals believed that rules precluding the pleading of amounts of unliquidated damages in many states posed a "potential for abusive manipulation by plaintiffs, who may plead for damages below the jurisdictional amount in state court with the knowledge that the claim is actually worth more, but also with the knowledge that they may be able to evade federal jurisdiction by virtue of the pleading." *De Aguilar v. Boeing Co.,* 47 F.3d 1404, 1410 (5th Cir.1995) (hereinafter *"De Aguilar II "*); *accord Allen,* 63 F.3d at 1335 n. 14. The Circuit Court of Appeals feared that such manipulative pleadings would be in "bad faith." *De Aguilar II,* 47 F.3d at 1410. However, there is no hint·of bad faith in the present pleadings. What persuades the court to follow the procedure suggested by the Fifth Circuit Court of Appeals is no such fear about bad faith or manipulation, but more pragmatic concerns. State pleading rules precluding the plaintiff from pleading any specific amount of unliquidated damages do present a unique problem when federal removal jurisdiction in di-

*Aguilar II*") (applying the same method with a preponderance of the evidence requirement to determination of the removability of a petition that did not specify the amount in controversy); *but see Burns v. Windsor Ins. Co.,* 31 F.3d 1092, 1095–96 (11th Cir.1994) (applying a similar procedure, but using the "legal certainty" standard to decide the amount in controversy for removal jurisdiction where plaintiff's complaint specified *less* than the jurisdictional amount in controversy).

▪ The procedure stated in *Allen* is used with some consistency among federal courts when the amount in controversy is not apparent from the pleadings themselves, particularly in light of state and local rules barring prayers for unliquidated damages in specific amounts. *Land v. Dollar,* 330 U.S. 731, 735 & n. 4, 67 S.Ct. 1009, 1011 & n. 4, 91 L.Ed. 1209 (1947) (where amount in controversy is not apparent from the pleadings, federal courts may look outside those pleadings to other evidence in the record); *Burns,* 31 F.3d at 1096 (employing same procedure, but with higher "legal certainty" standard, to determination of jurisdiction when defendant removed action in which complaint specified less than the jurisdictional amount in controversy); *United Food & Commercial Workers Union, Local 919 v. Centermark Properties Meriden Square, Inc.,* 30 F.3d 298, 306 (2d Cir.1994) (matter was remanded to district court to develop record by "allow[ing] the parties to submit evidence on the amount in controversy and to give defendants an opportunity to meet their burden" in order to determine whether matter was removable where pleadings did not specify amount in controversy); *Gafford,* 997 F.2d at 160–61 (district court properly held pre-trial evidentiary hearing on amount in controversy to determine its jurisdiction on removal where

pleadings did not specify amount in controversy); *and compare Shaw,* 994 F.2d at 366–68 (because Illinois law prohibits tort claimants from specifying exact damages in a complaint, some further examination of the amount in controversy is necessary; the court endorsed no general procedure, but suggested appropriate procedures include seeing if plaintiff conceded the amount in controversy in arguments or by contesting removal only on other grounds in the first instance and requiring defendant to obtain an answer to an interrogatory about the value of the claim prior to removing the action, but the court rejected requiring plaintiff to stipulate that if the case was remanded the plaintiff would not seek more than $50,000 in damages); *but see Laughlin v. Kmart Corp.,* 50 F.3d 871, 873 (10th Cir.1995) (amount in controversy is ordinarily determined by the allegations in the complaint, or, where they are not dispositive, by the allegations in the notice of removal, and notice of removal must state " 'underlying facts supporting [the] assertion that the amount in controversy exceeds $50,000,' " quoting *Gaus v. Miles, Inc.,* 980 F.2d 564, 567 (9th Cir.1992); thus, allegations in a brief and accompanying economic analysis in support of removal failed because they had not been included in the notice of removal). Indeed, in circumstances not involving removal jurisdiction, but nonetheless involving a challenge to the court's diversity jurisdiction by means of a motion to dismiss on the ground that the case involved insufficient amount in controversy, the Eighth Circuit Court of Appeals has authorized the courts to consider affidavits and answers to interrogatories either to support or defeat diversity jurisdiction. *Larkin v. Brown,* 41 F.3d 387, 389 (8th Cir.1994); *Zunamon v. Brown,* 418 F.2d 883, 887 (8th

versity cases depends in part on the amount in controversy in the complaint. In such circumstances, the court simply has no reasoned basis for determining whether a state-court petition does or does not state a claim exceeding the federal jurisdictional amount and the court should not decide its jurisdiction based upon a dearth of information. In some cases, it may be a relatively simple matter for the defendant to demonstrate from monetary injuries already allegedly incurred, such as medical expenses or lost wages, or even from the nature of the inju-

ries claimed, that such injuries are more likely than not in excess of $50,000. Such a case may properly belong in federal court, on the basis of amount in controversy, even though state pleading rules preclude itemization of such damages in the plaintiff's prayer. The procedure drawn from the Fifth Circuit Court of Appeals and applied here at least allows the court to make its determination of its removal jurisdiction on some reasoned basis, with input from the parties, instead of on the basis of mere judicial speculation about the value of a claim.

Cir.1969). Therefore, the court must consider disposition of the motion to remand in two steps: first, the court must determine whether the complaint is removable on its face; second, if the complaint is not removable on its face, the court must provide the parties with the opportunity to satisfy the court as to the amount in controversy.

### 3. Application of standards and procedures

#### a. Amount in controversy on the face of the complaint

The provision of Iowa law that prohibits any pleading to state the amount of money damages demanded, Iowa Code § 619.18, a provision with which this court might otherwise have no quibble, does hamper the court's determination of the amount in controversy on the face of the complaint in this case. This provision prohibits the plaintiff from providing in her complaint precisely the information this federal court might find most helpful to determining whether the case involves sufficient amount in controversy to support federal diversity jurisdiction. As a consequence of the Iowa provision, and not through any fault of the plaintiff, the face of the complaint in this matter provides no reasoned basis for determining the amount in controversy from its allegations of damages for "exacerbation of physical injuries, pain and suffering, unnecessary and unreasonable delay in obtaining health care to alleviate pain and improve and diminish physical [ ]impairment, actual economic loss, severe mental and emotional distress, and damage to [her] reputation in the community." Although the complaint might be more helpful if it provided more information about the nature of the plaintiff's physical injury, such as the part or parts of the body affected or the extent of the injury, or the nature of the pain it is alleged to have caused, whether periodic, chronic, occasional, moderate or severe, or the nature and extent of the resulting physical impairment from the injuries and pain, the complaint does not provide such information. Again, because Iowa law forbids it, the complaint does not state the amount demanded as damages for any actual economic loss or medical expenses incurred for which workers compensation coverage has purportedly been improperly denied. Thus, the allegations of actual damages on the face of the complaint provide the court with no basis for determining the amount of actual damages in question.

■ The court notes that the petition seeks punitive damages in addition to actual damages. Punitive damages are included in determining the amount in controversy for diversity jurisdiction purposes. *State of Mo. ex rel. Pemiscot County v. Western Sur. Co.,* 51 F.3d 170, 173 (8th Cir.1995); *Larkin,* 41 F.3d at 388; *Allison v. Security Benefit Life Ins. Co.,* 980 F.2d 1213, 1215 (8th Cir.1992); *see also Allen,* 63 F.3d at 1334–35 (the entire amount of punitive damages was countable as to each of 512 plaintiffs to determine amount in controversy for removal purposes). However, the mere fact that the plaintiff has asserted a claim for punitive damages does not relieve the defendant, as the removing party, of its burden to establish the propriety of removal jurisdiction nor necessarily establish that it is more likely than not the case that the amount in controversy will exceed $50,000. The Eighth Circuit Court of Appeals has held that when the amount in controversy depends upon a claim for punitive damages, the court "will scrutinize a claim for punitive damages more closely than a claim for actual damages to ensure Congress's limits on diversity jurisdiction are properly observed." *Pemiscot County,* 51 F.3d at 173; *Larkin,* 41 F.3d at 389. Thus, when a party challenges the amount in controversy, the district court errs by looking only at the *allegation* of punitive or exemplary damages as sufficing to establish the requisite amount in controversy. *Pemiscot County,* 51 F.3d at 173. Whether punitive damages are sufficient to provide the requisite amount in controversy depends, first, upon whether punitive damages are available as a matter of state law, *Larkin,* 41 F.3d at 389 (punitive damages were not available under Missouri law in assault case on facts alleged); *see also Hall v. Modern Woodmen of Am.,* 68 F.3d 1120, 1121 (8th Cir.1995) (where punitive damages were not available under Arkansas law for breach of contract claim, and amount of actual damages was only $25,000, case did not involve sufficient

amount in controversy), and, second, whether the amount of punitive damages will more likely than not exceed the required amount in controversy. *Allen,* 63 F.3d at 1335 (standard upon challenge to removal jurisdiction when no amount in controversy is specified in complaint is whether it is more likely than not that amount of claim exceeds jurisdictional requirements); *Cadek v. Great Lakes Dragaway, Inc.,* 58 F.3d 1209, 1212 (7th Cir. 1995) (same two-step analysis, but in circumstances where amount of punitive damages is specifically stated in complaint, second step is to require proof beyond a legal certainty that plaintiff will in no circumstances be entitled to recover the jurisdictional amount).

Here, the court finds that punitive damages may be available under Iowa law for a claim of bad-faith failure to pay workers compensation benefits on the facts alleged. *See, e.g., Kiner v. Reliance Ins. Co.,* 463 N.W.2d 9 (Iowa 1990). However, again because of the prohibition under Iowa law, no amount of punitive damages is specified. Furthermore, the complaint makes typical, but at best only conclusory allegations concerning the defendants' willfulness. Such allegations provide even less information about the conduct that allegedly supports the plaintiff's claim for punitive damages than do the allegations that support the claim for actual damages. The punitive damages claim should be scrutinized even more carefully than the actual damages claim, *Pemiscot County,* 51 F.3d at 173; *Larkin,* 41 F.3d at 389, and in this case the court has even less basis upon which to guess the amount of punitive damages than it has to guess the amount of actual damages. Thus, the court has no way to determine on the face of the complaint whether it is more likely than not that the claims for actual and punitive damages, either separately or in combination, will exceed the required amount in controversy to support federal diversity jurisdiction in this case.

### b. Looking beyond the complaint

■ Having found that the face of the complaint fails to establish that the claim involved here more likely than not is for an amount in excess of the jurisdictional minimum, the court must look beyond the complaint to "summary-judgment-type evidence" to make its determination. *Allen,* 63 F.3d at 1335. The first such evidence, and the only evidence presently before the court, from outside of the complaint itself is the defendant's notice of removal.

Even if the notice of removal is considered in addition to the plaintiff's petition, *Laughlin,* 50 F.3d at 873, it too fails to establish jurisdiction. Defendants' assertion in the notice of removal that the lawsuit involves an amount in controversy in excess of $50,000 is merely conclusory and the notice states as facts in support only a reiteration of the items of damages stated in the plaintiff's petition. Such conclusory allegations do not provide an adequate basis for determining this court's jurisdiction. *Allen,* 63 F.3d at 1335.

■ The court therefore feels compelled to delay disposition of the motion to remand, and, consequently, the motion to hold in abeyance, until it can decide the remand question on the basis of further evidence submitted pursuant to the procedure suggested in *Allen.* The parties are each ordered to submit a sworn affidavit stating *facts* that establish to a reasonable probability the monetary value of the damages plaintiff sought at the time the complaint was filed, because "[r]emoval ... cannot be based simply upon conclusory allegations," and any jurisdictional facts asserted by the removing party must be judged "at the time of the removal." *Allen,* 63 F.3d at 1335. Based on these affidavits, the court will determine whether the defendants have met their burden to establish the propriety of this court's exercise of removal jurisdiction by the greater weight or preponderance of the evidence. *Id.; see also McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936); *Shaw,* 994 F.2d at 366 (removing party must prove removal jurisdiction is proper "by the preponderance of the evidence," citing *McNutt,* which the court held means proof "to a reasonable probability"). Any doubt that remains as to the propriety of exercising removal jurisdiction in light of these affidavits,

however, will be resolved in favor of remand of this action to state court. *In re Business Men's Assur. Co. of Am.,* 992 F.2d at 183; *Steel Valley Auth. v. Union Switch & Signal Div.,* 809 F.2d 1006, 1010 (3d Cir.1987), *cert. denied,* 484 U.S. 1021, 108 S.Ct. 739, 98 L.Ed.2d 756 (1988). In the interim, ruling must be reserved on the plaintiff's motion to remand to state court.

### B. Motion To Hold In Abeyance

Because the court is unable to resolve at this time the question of whether or not it has jurisdiction over this matter, it cannot yet rule on defendants' motion to hold in abeyance. Therefore, ruling must also be reserved on defendants' motion to hold this action in abeyance until such time as the court disposes of plaintiff's motion to remand this action to state court. If the court retains jurisdiction over this matter, it will, of course, consider the motion to hold in abeyance at its earliest convenience. However, if the court determines that this matter must be remanded to state court owing to the lack of a sufficient amount in controversy to support diversity jurisdiction, the motion to hold in abeyance will be denied as moot, as it will be the proper province of the state court to decide the issue presented by that motion.

### III. CONCLUSION

The court concludes that this action is not removable on the face of the complaint, because Iowa law prohibits statement of the amount of actual or punitive damages demanded and the court is unable to determine from the factual allegations what the amount in controversy might be. The allegation of entitlement to punitive damages cannot, without more, make it more likely than not that the complaint demands damages in excess of the jurisdictional amount, thereby justifying the exercise of the court's diversity jurisdiction. Consequently, this court is unable to determine from the face of the complaint whether or not to exercise diversity jurisdiction. Nonetheless, the court concludes that the proper procedure, in order to decide the jurisdiction of the court on a reasoned basis, is to allow the parties the opportunity to submit affidavits concerning the amount in controversy at the time the notice of removal was filed.

Therefore, the parties are each ordered to submit **within ten days** of the date of this order **a sworn affidavit or affidavits** stating *facts* that establish to a reasonable probability the monetary value of the damages plaintiff sought at the time the complaint was filed. Conclusory allegations are unacceptable. Ruling is **reserved** on plaintiff's motion to remand and defendants' motion to hold in abeyance until such time as the court has considered the affidavits in support of the amount in controversy in this action and conducted such further proceedings as the court may deem necessary.

**IT IS SO ORDERED.**